**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GLOBAL ENVIRONMENTAL )
RESTORATION, INC., )
       )
      Plaintiff, )    Civil Action No. 22-431
       )
      v. )
       )
SHORE CORPORATION, )
       )
      Defendant.

**MEMORANDUM OPINION**

Presently before the Court is Defendant Shore Corporation's Motion to Dismiss Counts Three (Conversion) and Five (Louisiana Unfair Trade Practices and Consumer Protection Law) of Plaintiff Global Environmental Restoration, Inc.'s Complaint (Docket No. 16) pursuant to Federal Rule of Civil Procedure 12(b)(6), Shore Corporation's accompanying brief (Docket No. 17), Global Environmental Restoration Inc.'s memorandum in opposition to the motion (Docket No. 18), and Shore Corporation's reply brief (Docket No. 19). For the reasons set forth herein, the Court will grant Shore Corporation's motion and dismiss Counts Three and Five of the Complaint.

**I.**    **Background**[1]

Shore Corporation ("Shore") is a Pennsylvania corporation that produces chemical products, and previously produced chlorine dioxide products like "Nok-Out™" and "Sniper™"— respectively, an odor eliminator and Level IV-EPA-approved hospital-grade disinfectant—for Global Environmental Restoration, Inc. ("GER"). (Docket Nos. 1, ¶¶ 1–2; 1-3, pg. 2). Shore originally produced these products for Amazing Concepts, LLC (a Michigan limited liability

---

[1]    The Court draws this summation of relevant factual allegations from the Complaint and construes all allegations in the light most favorable to Global Environmental Restoration, Inc. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

company, (Docket No. 1-3, pg. 2), hereinafter "Amazing"), before GER purchased Amazing's assets in December 2014, stepped into Amazing's shoes with respect to its business dealings with Shore, and continued to do business with Shore until 2020.  (Docket No. 1, ¶¶ 12–21).

Under a Product Purchase Agreement dated March 13, 2014 ("March 2014 PPA"), Shore agreed to act as Amazing's—and, accordingly, GER's—manufacturer, and Shore further agreed that after five years and a payment of $400,000, certain product formulations and manufacturing information would be conveyed to GER.  (*Id.* at ¶ 17).[2]  Shore was not permitted to independently manufacture and sell products to third parties under the March 2014 PPA.  (*Id.* at ¶ 18).  As the end of the five-year period specified in the March 2014 PPA drew near, GER alleges it and Shore agreed to extend the final payment, and that GER made its final payment under the March 2014 PPA in March 2020.  (*Id.* at ¶¶ 24-25).

However, after making that final payment, GER alleges that Shore: "contacted GER to indicate that it had no intention of abiding by its contractual obligations under the [PPA] unless GER entered into a new five-year requirements contract"; wrongfully retained the formulations and manufacturing information that GER purchased; informed GER it would not "fill any more orders" or "ship orders" until a new agreement was reached; and demanded that the new agreement include permission for Shore to sell directly to consumers.  (*Id.* at ¶ 26).  GER alleges that Shore was motivated to act thus because of the high demand for disinfectant products at the beginning of the COVID-19 pandemic.  (*Id.* at ¶ 30).  GER also alleges that Shore ultimately sold products to third parties in violation of GER's rights to formulations and manufacturing information, *e.g.*, the "Shore's Best" product.  (*Id.* at ¶ 45).

---

[2]     From here on the Court will refer directly to GER when discussing the agreements struck by Shore and Amazing.  The parties do not dispute that GER assumed Amazing's role in its relationship with Shore.

*Proceedings in the U.S. District Court for the Western District of Louisiana (Lafayette Div.)*

The events just described led to the breakdown of the parties' business relationship, and GER filed suit against Shore in the United States District Court for the Western District of Louisiana (Lafayette Division). (Docket No. 17, Ex. A). Therein GER alleged breach of contract, conversion, and violation of the Louisiana Unfair Trade Practices Act. (*Id.*). Shore filed a Motion to Transfer under 28 U.S.C. § 1404(a) or Dismiss under *Forum Non Conveniens*. (*Id.*, Ex. B). The district court granted Shore's motion pursuant to *Forum Non Conveniens*. (*Id.*, Ex. B, pg. 14). In the decision, the district court reviewed the origin of Shore and GER's business relationship. The district court explained that Shore and Amazing's business relationship dated back to the 1990s. (*Id.* at pg. 2). On October 28, 2013, Shore and Amazing signed a Mutual Non-Disclosure Agreement ("October 2013 NDA") regarding non-disclosure of proprietary information, with a forum selection clause identifying the Commonwealth Court of Allegheny County, Pennsylvania, as the appropriate forum for legal action. (*Id.*). Then, on January 13, 2014, Shore and Amazing entered a Manufacturing and Hold Harmless Agreement ("January 2014 MHHA") with a choice of law and venue provision indicating that: "[t]he provisions of [their] Agreement shall be governed by Pennsylvania law, without regard to any conflict of law provisions." (*Id.*). And then, on March 13, 2014, Shore and Amazing entered the March 2014 PPA described above. The PPA acknowledged the October 2013 NDA and the January 2014 MHHA and indicated that its own provisions and the provisions of those earlier agreements were subject to each other. (*Id.*). The March 2014 PPA also indicated that the agreement would be interpreted under the laws of Pennsylvania, though it included no choice-of-forum provision. (*Id.* at 3).

In December 2015, GER executed an MHH of its own, though Shore never executed it. (*Id.*). GER emailed the MHH to Shore and attached to the email an NDA that GER had drafted

and signed. (*Id.*). This NDA included an Allegheny County, Pennsylvania choice-of-forum provision. (*Id.*). Like the MHH, this NDA was executed by GER, but not by Shore. (*Id.*). Then, in an April 2020 Terms and Conditions of Sale ("TCS") attached to the back of a sales invoice of GER's purchase of products from Shore, a venue provision stated that venue for "any and all disputes arising from the sale of goods" by Shore to GER—or from resale of goods—would be in a court of competent jurisdiction of Allegheny County, Pennsylvania and that Pennsylvania law would apply to "any dispute." (*Id.* at 4).

Considering these various agreements, the district court determined that the October 2013 NDA contained a forum selection clause that dictated any dispute related to the parties' agreement would be resolved in Allegheny County. (*Id.* at 8). The district court found that language to be mandatory and sought to determine whether the October 2013 NDA was incorporated into the March 2014 PPA because there was "no dispute" that GER's claims related to the PPA. (*Id.*). The district court then determined that the March 2014 PPA referred to and incorporated the October 2013 NDA with its forum selection clause. (*Id.* at 11). Accordingly, the district court determined that there was "a mandatory, valid, and enforceable forum selection clause" that had been agreed to by the parties. (*Id.* at 12). The district court went on to consider certain "public-interest factors" including "local interest in having localized controversies decided at home." (*Id.*). Considering that public-interest factor, the district court noted that: the parties' dispute was traceable to "contracts that were initially enacted between a Michigan company … and a Pennsylvania company"; "GER was aware of this when it acquired Amazing Concepts"; the products in question were "manufactured in Pennsylvania"; and that the products in question were available for sale across the country (*id.* at 13). Therefore, the district court determined that the parties' dispute was "not … a 'localized controversy' with respect to Louisiana." (*Id.*).

Still considering the public-interest factors, the district court determined that the contracts in question undisputedly "call for the application of Pennsylvania law" and that though the Louisiana district court would be "capable of researching and applying Pennsylvania law to the parties' contracts, a Pennsylvania court would obviously be much more familiar with Pennsylvania law." (*Id.*).  The district court also explained that "as the laws of Louisiana would not follow the case to Pennsylvania, the transfer or dismissal of the case would eliminate whatever chance there may be for unnecessary problems with conflicts of laws." (*Id.*).  Having considered the relevant public-interest factors, the district court concluded that they provided "no justification for refusing to enforce the forum selection clause applicable here." (*Id.* at 14).  And the district court further concluded that the parties had "consented to submit to the jurisdiction of the [Pennsylvania] court" by assenting to a valid forum selection clause. (*Id.*).  Accordingly, the district court dismissed GER's complaint without prejudice to GER refiling its claims in a state court forum in Allegheny County, Pennsylvania. (*Id.* at 15).

### *Proceedings in the U.S. District Court for the Western District of Pennsylvania*

GER thereafter filed its Complaint before this Court on March 10, 2022. (Docket No. 1). In this Court, GER re-alleges that after it made its final payment under the March 2014 PPA (which had been extended by the parties' mutual consent), Shore contacted GER and indicated its desire to have GER enter a new contract pursuant to which Shore would retain the formulas that GER had already paid for and, further, that Shore would be permitted to sell products directly to consumers even though it had previously been prohibited from doing so. (*Id.* at ¶ 26).  Shore then attempted to cover-up its own misconduct by fraudulently accusing GER of breaching the March 2014 PPA by failing to pay $300,000 by March 2019 despite the parties' agreement to an extended due date. (*Id.* at ¶¶ 27–29).

Based on these factual allegations, GER asserts five counts in its Complaint:  (Count I) Breach of Contract for Shore's bad-faith breach of the March 2014 PPA by, *inter alia*, refusing to provide GER with purchased formulations and manufacturing information and Shore's own sale of products to third parties; (Count II) Declaratory Judgment declaring that GER owns the formulations and manufacturing information in question and that Shore has no right of use of the same since March 2020; (Count III) Conversion for Shore's usurpation and taking of GER's rights by using the formulations and manufacturing information to which GER alleges it was entitled; (Count IV) Permanent Injunction preventing Shore's use of relevant formulations and manufacturing information to manufacture and sell products; and (Count V), violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPCPL") by Shore's unfair methods of competition and unfair or deceptive acts or practices in the conduct of business which, among other things, is egregious and offends public policy.  (*Id.* at ¶¶ 31–56).  Shore seeks, among other things, damages in excess of $75,000, punitive damages, a declaration that GER is the sole owner of relevant formulations and manufacturing information and all products manufactured and produced using the same, a permanent injunction of Shore's sale of products owned by GER to any third-party, an accounting of any amounts that Shore received from the sale of any products manufactured using the formulations and manufacturing information in whole or part; and attorney fees and costs.  (*Id.* at ¶ 56(a)–(h)).  Shore has moved to dismiss the Complaint, and the motion is fully briefed.  (Docket Nos. 16, 17, 18, and 19).[3]

## II.    Legal Standard

In the Court's consideration of a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most

---

[3]    The Court notes that since briefing concluded on the motion to dismiss, the parties have been engaged in discovery and early neutral evaluation of their case.  (*See* Docket Nos. 66, 78, 79).

favorable to the plaintiff, and the Court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The standard "does not impose a probability requirement at the pleading stage." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). However, the requirement that a court accept as true all factual allegations does not extend to legal conclusions and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To review a complaint under this standard, the Court proceeds in three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## III.   <u>Discussion</u>[4]

In its motion to dismiss and brief filed in support thereof, Shore argues that the Court—applying Pennsylvania law to GER's conversion and LUTPCPL claims—should dismiss those claims because they are deficient as a matter of Pennsylvania law. However, GER protests that

---

[4]      The Court exercises jurisdiction in this matter pursuant to 28 U.S.C. § 1332 where GER is incorporated in and has its principal place of business in Louisiana, Shore is incorporated in and has its principal place of business in Pennsylvania, and the amount in controversy exceeds $75,000.

Pennsylvania law is inapplicable to its tort claims because the parties never agreed to have their entire relationship governed by Pennsylvania law; rather, they agreed merely that their *agreement* would be interpreted pursuant to Pennsylvania law.  To address that question—and the questions that flow from it—the Court begins with a review of Pennsylvania choice-of-law principles.

    A.    *The Parties' Choice-of-Law Agreement(s)*

This Court, as a federal district court sitting in diversity, applies the choice-of-law rules of the Court's forum state, in this case the Commonwealth of Pennsylvania.  *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010).  Pennsylvania generally honors contractual choice-of-law provisions.  *DL Res., Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 216 (3d Cir. 2007).  And where parties agree to a broad choice-of-law provision in a contract, the provision is likely to apply to contract, tort, and statutory claims.  *See e.g.*, *PTI Servs., Inc. v. Quotron Sys., Inc.,* No. CIV. A. 94-2068, 1995 WL 241411, at *9 (E.D. Pa. Apr. 19, 1995) (interpreting the parties' agreement to apply New York law to "the adjudication of any matter" related to their agreement as encompassing both contract and tort claims in that case).  However, if the parties have only agreed to a choice-of-law provision that applies to their agreement and does not, by "fair import … embrace[] all aspects of the legal relationship," then such provision will "not govern tort claims between contracting parties."  *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994).

In this matter, GER argues the choice-of-law provision relevant to the parties' dispute is found in the March 2014 PPA and that this provision "applies only to interpretation of the agreement itself."  (Docket No. 18, pg. 7).  However, Shore argues that GER's position with respect to the applicability of Pennsylvania or Louisiana law is a direct contradiction of GER's previous admissions that Pennsylvania law applies more broadly.  (Docket No. 19, pgs. 3–4).

Shore also points to the October 2013 NDA and January 2014 MHHA wherein it and GER's predecessor had agreed upon choice-of-law and venue provisions identifying Pennsylvania law as the applicable state's law.  (*Id.* at 4–5).  As discussed *supra*, Section I (Background), the October 2013 NDA dictates that the "Agreement shall be governed by the laws of … Pennsylvania," (*Id.*, Ex. E), and the January 2014 MHHA dictates that it "shall be governed by Pennsylvania law, without regard to any conflict of law provisions."  (Docket No. 1, Ex. 1).  Shore argues that the agreements read together indicate that the parties intended for Pennsylvania law to govern their entire relationship.

The Court has considered these arguments and is ultimately unpersuaded that the parties agreed to have their *entire relationship* governed by Pennsylvania law.  Reading the parties' agreements—particularly the March 2014 PPA—it is apparent that the choice-of-law provision(s) agreed to by the parties are not applicable to the parties' entire business relationship.[5]  It would strain the plain meaning of the terms of the parties' agreements, regarding choice of law, to construe the language as covering more than interpretation of the agreements themselves.  The Court observes that the District Court for the Western District of Louisiana (Lafayette Division) determined that the October 2013 NDA was incorporated into the March 2014 PPA and thus found there to be a "mandatory, valid, and enforceable forum selection clause" for purposes of finding the correct forum for the parties' dispute.  (Docket No. 17, Ex. B).  And the Court notes that there are some instances where forum-selection and choice-of-law provisions affect each other.  For

---

[5]      For clarity, the Court recites the choice-of-law and forum provisions in the relevant agreements here.  For the October 2013 NDA: "Construction.  **This Agreement** shall be governed by the laws of the Commonwealth of Pennsylvania.  Any legal action between the parties concerning or involving this Agreement shall be instituted only in the Commonwealth Court of Allegheny County, PA."  (Docket No. 19, Ex. B (emphasis added)).  January 2014 MHHA: "The provisions of **this Agreement** shall be governed by Pennsylvania law, without regard to any conflict of law provisions."  (Docket No. 1-2 (emphasis added)).  March 2014 PPA: "**This Agreement** will be interpreted under the laws of the Commonwealth of Pennsylvania."  (Docket No. 1-3 (emphasis added)).

example, in *Lipman Bros. v. Apprise Software, Inc.*, No. CIV.A. 13-4439, 2015 WL 4476983, at *3 (E.D. Pa. July 22, 2015), the court broadly read a "Governing Law" provision of the parties' agreement to cover both choice-of-law and forum selection despite the language perhaps more clearly reflecting a choice of forum. However, even looking to the October 2013 NDA, the Court is unpersuaded it reflects a compromise between the parties to resolve any dispute arising from their business relationship under Pennsylvania law.

    B.    *Application of Pennsylvania Choice-of-Law Principles*

The Court having decided that the parties did not agree to a choice-of-law provision covering all disputes arising from their relationship, the Court will continue to its application of Pennsylvania choice-of-law principles generally to determine whether it ought to apply Pennsylvania or Louisiana law to GERS's conversion and LUTPCPL claims. *Corle Bldg. Sys., Inc. v. Ogden Welding Sys., Inc.*, 684 F. Supp. 3d 390, 400 (W.D. Pa. 2023) ("As the choice of law provision is inapplicable, this Court sitting in diversity must apply the forum state's choice of law rules.").[6] And, as an initial matter, this means that the Court must determine whether there is a conflict between Pennsylvania's gist-of-the-action doctrine and Louisiana law with respect to simultaneous pursuit of contract and tort claims from actions that are related to an underlying contract among parties.

---

[6]    GER argues in its opposition to the motion to dismiss that Shore was so sure of its contractual choice-of-law argument that it failed to argue and therefore waived, an argument for application of Pennsylvania law pursuant to general Pennsylvania conflict-of-law rules. (Docket No. 18, pg. 7 ("Shore's motion to dismiss GER's LUTP claim relies entirely on its mistaken contractual choice of law contention. **Accordingly, Shore has waived any argument** that, even if the contractual provision did not apply, then Pennsylvania's choice of law analysis would still preclude GER's LUTP claim." (emphasis added))). In the Court's estimation, Shore's failure to address this issue in its opening brief is, at worst, forfeiture rather than waiver. And the Court is inclined to resolve the parties' disagreement on the merits where the determination of which law applies pursuant to Pennsylvania's choice-of-law principles is a legal determination. *Grant for A.D. v. Saul*, No. CV 18-1338, 2020 WL 1531664, at *1 (E.D. Pa. Mar. 31, 2020) (explaining that the courts have discretion to decide an issue despite forfeiture and are particularly likely to do so if the "forfeited issue is purely legal in nature" (citing *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146-47 (3d Cir. 2017))).

In the conflict-of-laws determination—*i.e.*, the determination of what substantive law governs a claim, Pennsylvania courts apply a "flexible, interests/contacts methodology." *First Choice Fed. Credit Union v. Wendy's Co.*, No. CV 16-506, 2018 WL 2729264, at *2 (W.D. Pa. May 9, 2018), *report and recommendation adopted*, No. CV 16-506, 2018 WL 2721998 (W.D. Pa. June 6, 2018) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226–27 (3d Cir. 2007)). The first inquiry in this methodology is to determine which states' laws might apply and whether there is a conflict of law. *Id.* at *2. There is an actual conflict if the states treat issues differently such that application of the states' respective laws would "lead to different outcomes." *Davis v. Geico Gen. Ins. Co.*, 957 F. Supp. 2d 544, 548–49 (M.D. Pa. 2013). "If the application of the competing laws would not lead to different outcomes, no conflict exists, and the court need only apply the forum State's law." *Id.*

However, in the event of an actual conflict, the Court must determine whether the conflict is "true," "false," or an "unprovided-for situation." *Id.* at 549 (quoting *Reinert v. Nationwide Ins. Co.*, No. CIV.A. 12-1094, 2013 WL 1311097, at *3 (E.D. Pa. Apr. 2, 2013)); *Corle Bldg. Sys., Inc.*, 684 F. Supp. 3d at 400. A conflict is false if "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 594 (E.D. Pa. 1999) (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)). If the conflict is true, *i.e.*, "the interests of each state would be impaired if the law of the other is given effect," then the Court must decide "which state has the greater interest in the application of its law." *Id.* (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)). Courts may assess the comparative interest of different states by reviewing the states' relevant contacts with events underlying a claim. *Cipolla*, 267 A.2d at 856. Relevant contacts include "the place where the injury occurred; the place where the conduct

11

causing the injury occurred; the domicile, residence, place of business, and place of incorporation of the parties; and the place where the relationship between the parties is centered." *Coram Healthcare Corp.*, 94 F. Supp. 2d at 594. The Court measures contacts qualitatively. *Id.*

Applying these principles to the first issue before the Court—whether Pennsylvania's gist-of-the-action doctrine bars GER's tort claims, conversion and LUTPCPL—the Court's first determination is that there is a conflict among Pennsylvania and Louisiana law with respect to the gist-of-the-action doctrine.[7] How the gist-of-the-action doctrine works in Pennsylvania is that the courts look to the averments in a complaint to determine whether a party's claim sounds in tort or in breach of contract and, where "the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract … then the claim is to be viewed as one for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty … imposed by the law of torts … then it must be regarded as a tort." *Id.* This line of demarcation between tort and contract claims employed by Pennsylvania courts is meant to address "the concern that tort recovery should not be permitted for contractual breaches." *Corle Bldg. Sys., Inc.*, 684 F. Supp. 3d at 401 (quoting *Addie v. Kjaer*, 737 F.3d 854, 865 (3d Cir. 2013)). And the gist-of-the-action doctrine accomplishes this by keeping plaintiffs from "recasting ordinary breach of contract claims into tort claims." *Id.* (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)). Louisiana courts do not similarly conceive of this dividing line between tort and breach of contract. "Under Louisiana law, the same acts or omissions may constitute a breach of

---

[7]  Both conversion and LUTPCPL claims are tort claims that would be affected by Pennsylvania's gist-of-the-action doctrine. *Harris v. Poche*, 2005-0664 (La. App. 4 Cir. 4/12/06), 930 So. 2d 165, 172, *writ denied*, 2006-1113 (La. 10/6/06), 938 So. 2d 74 (rejecting breach of contract cases to assess the issue of damages for a LUTPCPL claim because they did "not address a cause of action in tort, under the Louisiana Unfair Trade Practices Act").

both general duties and contractual duties and may give rise to both actions in tort and actions in contract." *In re Oracle Oil, LLC*, No. CV 18-3674, 2019 WL 1597831, at *3 and n.27 (E.D. La. Apr. 15, 2019) (quoting *Ridge Oak Dev., Inc. v. Murphy*, 641 So. 2d 586, 588 (La. Ct. App. 1994)). Clearly, Pennsylvania and Louisiana law conflict; therefore, the next question that the Court must address is whether this is a false conflict or a true conflict, and the Court determines this by "examining the policies underlying the relevant laws." *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 93 (3d Cir. 2008).

Shore vehemently argues that Louisiana's position as to a gist-of-the-action doctrine does not so strongly indicate its rejection of such a doctrine that it can be said there is a true conflict here. Shore interprets Louisiana precedents addressing simultaneous pursuit of tort and contract claims as somewhat ambivalent to the gist-of-the-action doctrine and argues that "Louisiana has expressed no policy one way or the other with respect to the Gist of the Action issue." (Docket No. 19, pg. 7). Shore further argues that the cases cited by GER for the proposition that Louisiana does not recognize and/or rejects gist-of-the-action do not support GER's argument in that regard. (*Id.* at pg. 9). Meanwhile, GER insists that the gist-of-the-action doctrine is not recognized in Louisiana where "[t]he law is clear that where a party has been damaged by conduct arising out of a contract he may have a right to seek damages both in tort and for breach of contract." *State ex rel. Guste v. Chem. Applicators of Lafayette, Inc.*, 379 So. 2d 1199, 1201 (La. Ct. App. 1980) (cited in Docket No. 18, pg. 19, n.13). In reply, Shore argues that the cases cited by GER merely show that a plaintiff in Louisiana whose claims are subject to Louisiana law may pursue remedies in contract *or* tort but not both simultaneously. (Docket No. 19, pg. 10 (citing *Fed. Ins. Co. v. Ins. Co. of N. Am.*, 263 So. 2d 871, 872 (La. 1972))).

Despite Shore's insistence that there is—at most—a false conflict in this matter, the Court finds it difficult to accept that argument given Pennsylvania courts' strong aversion to allowing tort suits for contract-related injuries compared to Louisiana's permissive approach.  Louisiana courts appear to champion a more plaintiff-protective pleadings principle that allows causes of action in both tort and contract, in contrast to Pennsylvania's defendant-protective approach.  *See Owen J. Roberts Sch. Dist. v. HTE, Inc.*, No. CIV.A. 02-7830, 2003 WL 735098, at *3 n.4 (E.D. Pa. Feb. 28, 2003) (finding a true conflict between Pennsylvania and Florida law with respect to Pennsylvania's "defendant-protective" gist-of-the-action doctrine and Florida's more "plaintiff-protective" posture).  And it is difficult for the Court to reconcile Shore's arguments that Louisiana courts do not outright reject a gist-of-the-action doctrine when the Court reviews cases like *Claborne v. Hous. Auth. of New Orleans*, 2023-0214 (La. App. 4 Cir. 3/21/24), 2024 WL 1208523, —So.3d—, wherein the Court of Appeal of Louisiana, Fourth Circuit, reiterated "well-settled" law in Louisiana that "the same acts or omissions may constitute breaches of both general duties and contractual duties and may give rise to both actions in tort and actions in contract."  *Id.* at *7.  In that matter, the court further explained that Louisiana plaintiffs are permitted to "assert both [tort and contract] actions and [are] not required to plead the theory of [his or her case]."  *Id.* at n.13.  And the court further determined in that matter that the plaintiffs were "owed a duty/obligation under tort and contract principles," where the trial court had erred in finding that no such duties arose in tort.  *Id.* at 8–9 (explaining that, under Louisiana tort law, defendants governed by federal safety regulations have a general duty to exercise care in compliance with federal regulations).

Resisting a conclusion that there is a true conflict among Pennsylvania and Louisiana law concerning gist-of-the-action, Shore compares the degree of conflict between Pennsylvania and Louisiana law in this area to that between Pennsylvania and Maine law, which was addressed in

*InSyte Med. Techs., Inc. v. Lighthouse Imaging, LLC*, No. CIV.A. 13-1375, 2014 WL 958886 (E.D. Pa. Mar. 11, 2014). However, the Court does not find this comparison to be compelling because the court in *InSyte* found no true conflict of Pennsylvania and Maine law in part because Maine courts occasionally appeared to apply a doctrine similar to Pennsylvania's gist-of-the-action doctrine.[8] Based on the Court's assessment of the cases cited by the parties and its independent review of Pennsylvania and Louisiana cases, it is the Court's determination that there is a true conflict between Pennsylvania and Louisiana law in this instance; therefore, the Court must perform the "deeper choice of law analysis" wherein because both states' interests would be harmed by application of the other's law, the Court "engage[s] in the contacts and interests analysis to determine which state's law should apply." *Specialty Surfaces*, 609 F.3d at 230 (citing *Hammersmith*, 480 F.3d at 231).

In addressing this aspect of the choice-of-law analysis, the Court notes it has limited briefing—particularly from Shore. This seems to be because Shore is confident that there is no true conflict because only Pennsylvania—not Louisiana—would be injured by application of the gist of the action doctrine. (Docket No. 19, pg. 12). Of course, this Court has now rejected that

---

[8]    *InSyte Med. Techs., Inc. v. Lighthouse Imaging, LLC*, is a case wherein the United States District Court for the Eastern District of Pennsylvania considered whether Maine or Pennsylvania law applied with respect to the gist-of-the-action doctrine and determined that the state's laws presented only a "false conflict" such that Pennsylvania law was applied. 2014 WL 958886, at *4. The court in that case applied Pennsylvania choice-of-law rules as the Court has in this case. *Id.* In *InSyte*, the court explained that Pennsylvania has a strong policy against permitting tort suits for the "mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort," while Maine courts had "seldom … mentioned, either by name or in principle," the gist-of-the-action doctrine. *Id.* at *5. The court noted that, in one instance, Maine courts had appeared to "apply principles similar to Pennsylvania's gist of the action doctrine" such that Maine did not appear to reject it. *Id.* at *6. Comparing Pennsylvania and Maine law, the court determined that "Maine … ha[d] not adopted or rejected the gist of the action doctrine" such that only Pennsylvania's policy against duplicative recovery would be harmed if the court did not apply its gist-of-the-action doctrine. *Id.* at *7. Accordingly, the court found the conflict to be false and applied Pennsylvania law to bar tort recovery for claims arising solely out of duties created by contract. *Id.* Accordingly, the court determined that the negligence, fraud, negligent misrepresentation, and breach of fiduciary duty claims in that action were all barred by the gist-of-the-action doctrine. *Id.* at *7–12.

proposition and has determined there is a true conflict in this case with respect to gist-of-the-action. Therefore, the Court will qualitatively assess the states' interests in application of their conflicting laws and, in doing so, the Court will avoid merely tallying factors on one side or the other to come to a conclusion as to which state's law will apply. *Hammersmith*, 480 F.3d at 231. As discussed *supra*, the Court reviews "contacts each state has with the events giving rise to the claim, the contacts being relevant only if they relate to the policies and interests identified in the first-step." *Coram Healthcare Corp.*, 94 F. Supp. 2d at 594 (quoting *Cipolla*, 267 A.2d at 856) (cleaned up). Relevant contacts "include: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, place of business, and place of incorporation of the parties; and the place where the relationship between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws § 145(2)).

GER argues that the Court's qualitative assessment of relevant factors should lead the Court to conclude that Louisiana has the greater interest in application of its law because, in 2020, Shore reached into Louisiana to make its extortionate demand of GER for a new contract. GER also argues that Shore routinely delivered the property subject to the parties' agreements to GER in Louisiana, and further argues that the conversion injury occurred in Louisiana. With respect to its LUTPCPL claim, GER argues that Louisiana has the greater interest in applying its consumer protections to its residents and that, comparatively, Pennsylvania has no interests in allowing tortfeasors to escape liability. Finally, GER argues that Shore should have expected to be haled into Louisiana courts, and that this expectation is another factor in favor of applying Louisiana law. (Docket No. 18, pgs. 15, 19, 20, 21).

Having considered the parties' arguments, it is the Court's determination that Pennsylvania has the greater interest in application of its gist-of-the-action doctrine than Louisiana has in its

practice of permitting tort and contract claims.  The Court does not disagree with GER's argument that the injury in this case occurred in Louisiana where GER alleges that it was entitled to receive certain product formulations and manufacturing information upon full payment under the March 2014 PPA but was denied the same when Shore refused to deliver such formulations and, further, wrongly exercised dominion over what GER was legally entitled to by selling certain products directly to third parties.  *See Jefferson Schoolhouse Properties, LLC v. Ben Weitsman & Son of Jamestown, LLC*, No. CV 20-210, 2022 WL 4609393, at *3 (W.D. Pa. Sept. 30, 2022) (explaining that for pecuniary injuries, a plaintiff's principal place of business is where the injury is deemed to have occurred).  The place where the conduct causing injury occurred was Pennsylvania.  With respect to the locations of both parties, they are (of course) located in Pennsylvania and Louisiana.  And with respect to the place where the relationship among the parties is centered, it appears to the Court that the relationship is centered in Louisiana, particularly where Shore has not articulated a basis for finding that the relationship among the parties was centered in Pennsylvania and, as GER points out, the United States District Court for the Western District of Louisiana (Lafayette Division) determined that Shore actively sought to continue its relationship with GER.  (Docket No. 18 (citing *Glob. Envtl. Restoration Inc. v. Shore Corp.*, 2021 WL 790182, at *7–8 (W.D. La. Jan. 26, 2021), *report and recommendation adopted*, 2021 WL 786736 (W.D. La. Mar. 1, 2021)).  The Court notes that GER additionally argues that because its conversion and tort claims would be unavailable under Pennsylvania law, the Court should find that Louisiana has the greater interest—qualitatively—in the application of its law to prevent unfair trade practices.

If the Court were to simply tally the relevant contacts discussed above, GER would emerge victorious and would be able to pursue its tort claims against Shore.  However, as the Court has emphasized in this decision, the determination of which state has greater interest in application of

its laws at the second step of Pennsylvania's choice-of-law analysis is a qualitative assessment, not an arithmetical one.  In this assessment the Court also considers "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  *Davis v. Solaris Oilfield Site Servs. Pers.*, LLC, No. 2:19-CV-00627-RJC, 2024 WL 128954, at *3 (W.D. Pa. Jan. 11, 2024) (quoting Restatement (Second) of Conflict of Law § 146 (1971)).  The policies of the forum and the protection of justified expectations are particularly compelling to the Court in this matter.  As to the latter, the Court notes that the parties consistently contractually agreed to application of Pennsylvania law to resolve disputes arising from their agreements, in Pennsylvania fora.  And even when GER opposed Shore's Motion to Transfer or to Dismiss under *Forum Non Conveniens* in the Western District of Louisiana, GER "assert[ed] that [the Western District of Louisiana District Court] should maintain the case in a Louisiana court albeit *while applying Pennsylvania law.*"  (Docket No. 17, Ex. B, pg. 4) (emphasis added)).  The Western District of Louisiana District Court also remarked at that time that there was "no dispute that GER's claims relate to the [March 2014] PPA."  (*Id.* at 8).  That court also remarked that "as the laws of Louisiana would not follow [this] case to Pennsylvania, the transfer or dismissal of the case would eliminate whatever chance there may be for unnecessary problems with conflicts of laws."  (*Id.* at 13).  The Court considers the expectations reflected therein, as well as how Pennsylvania's adoption of the gist-of-the-action doctrine shows it has, as one court put it, "a great interest in protecting its citizens from improperly pled claims."  *H.H. Fluorescent Parts, Inc. v. DM Tech. & Energy, Inc.*, No. 04-CV-1997, 2005

WL 2972986, at *3 (E.D. Pa. Nov. 3, 2005).  On balance of all these considerations and assessing Louisiana and Pennsylvania's relative interests in seeing their law with respect to the gist-of-the-action doctrine applied in this matter, the Court finds that Pennsylvania has the greater interest in application of its law.

C.   *Application of the Gist-of-the-Action Doctrine to GER's Tort Claims*

Having decided to apply Pennsylvania law with respect to the gist-of-the action doctrine, the Court must ask: does the gist-of-the-action doctrine undermine the two claims in GER's Complaint that Shore now seeks to dismiss, *i.e.*, GER's conversion and LUTPCPL claims? Pennsylvania's gist-of-the-action doctrine is not so drastic as to preclude any action in tort when a "contractual relationship" exists between the parties.  *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619 (E.D. Pa. 2010).  Rather, the doctrine's function is to prevent a party from bringing a suit in tort "for the mere breach of contractual duties, without any separate or independent event giving rise to the tort."  *Id.* (quoting *Smith v. Lincoln Benefit Life Co.*, No. CIV.A.08–1324, 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009)) (cleaned up).  Accordingly, to determine whether the gist-of-the-action doctrine is fatal to a tort claim or claims, courts applying the doctrine must determine whether the duties alleged to have been breached were contractual or general.  *Id.* at 619–20.  Any tort claims that: "(1) aris[e] solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract," are prohibited.  *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, No. CIVA 06-3959, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006) (citing *eToll, Inc.*, 811 A.2d at 19).  That is, breach of duties that are "intertwined

with contractual obligations" may only be brought as contract claims.  *Brown & Brown, Inc.*, 745

F. Supp. 2d at 619–20.

Applying these principles to GER's conversion claim, the Court finds that such claim is

intertwined with Shore's alleged obligation to deliver certain formulations and manufacturing

information and thus to convey exclusive right to the same to GER under the March 2014 PPA.

GER's factual allegations in support of its conversion claim are that it paid Shore in full under the

March 2014 PPA but, rather than deliver the formulas and manufacturing information to which

GER was entitled, Shore refused to provide these to GER and used the same to sell products under

its own brand names in violation of the parties' prior agreement.  (Docket No. 1, ¶ 5).  GER further

alleges that not a week after Shore received GER's final payment under the March 2014 PPA,

"Shore contacted GER to indicate *that it had no intention of abiding by its contractual obligations*

under the [PPA] unless GER entered into a new five-year requirements contract with Shore."  (*Id.*

at ¶ 26 (emphasis added)).  Shore refused to deliver the formulas that GER had paid for and

demanded it be permitted to sell GER's products to customers directly.  (*Id.*).

GER's breach-of-contract claim at Count One of its Complaint is premised on these factual

allegations where GER explains that by refusing to deliver formulas for the products at issue and

Shore's use of the same to sell their own products direct to consumers, Shore breached the parties'

March 2014 PPA: "Shore has, in bad faith, breached the agreement as set forth herein by, among

other things, refusing to provide GER with the Formula for the products that GER purchased and

continuing to sell the products itself to third parties."  (Docket No. 1, ¶ 34).  Comparing this claim

at Count One with GER's conversion claim at Count Three, the Court detects no meaningful

difference: at Count Three GER alleges that it purchased exclusive rights to the formulas specified

in the March 2014 PPA but that, contrary to that agreement, "Shore … usurped and [took] GER's

rights, using the formulations and manufacturing information owned by GER to create and sell the products for which GER has the exclusive rights." (*Id.* at ¶¶ 43, 45). The gist-of-the-action doctrine is meant to prevent plaintiffs from asserting tort claims that "essentially duplicate[] a breach of contract claim." *Sunburst Paper, LLC*, 2006 WL 3097771, at *2. In the Court's estimation, GER's conversion claim is duplicative of the breach-of-contract claim; accordingly, the Court will dismiss the former.

With respect to the LUTPCPL claim, GER alleges that Shore used the onset of the COVID-19 pandemic in early 2020 "as an excuse to hold GER hostage to its unreasonable demands" and "effectively threatened the imminent shut down of GER" in this "power play." (Docket No. 1, ¶ 6). GER further alleges that Shore tried to disguise its own misconduct in not fulfilling its end of the contractual bargain when "Shore … fraudulently accused GER … of breaching the [March 2014 PPA]" by insisting GER had "fail[ed] to pay over $300,000 by March 2019, even though Shore admitted that GER paid the full amount owed by the extended due date of March 2020 and acknowledged in a January 2020 email that the term of the [PPA] had been extended." (*Id.* at ¶¶ 28–29). As the Court has already described, GER's breach-of-contract claim in Count One is premised upon Shore's alleged refusal to deliver formulas and manufacturing information specified in the March 2014 PPA despite GER's fulfillment of its end of the bargain. (*Id.* at ¶¶ 31–37). At Count Five for its LUTPCPL claim, GER alleges that Shore's business practices included "unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of its business" which amounted to "fraud, deceit, misrepresentation, and/or other unethical conduct." (*Id.* at ¶¶ 54, 56). However, the harmful acts that Shore is alleged to have engaged in at the onset of the COVID-19 pandemic all pertain to whether Shore breached its agreement to deliver certain formulas and manufacturing information under the March 2014 PPA. Thus, the duty alleged to

21

have been breached is "intertwined with contractual obligations" and cannot be pursued as a violation of a general moral obligation pursuant to tort law.  *Brown & Brown, Inc.*, 745 F. Supp. 2d at 619–20.  The alleged unfair practice in this action was Shore's power-play withholding of formulas that it was required to provide under the March 2014 PPA and its alleged fraudulent accusation lobbed at GER accusing GER of failing to make timely payments under the agreement. Other than a conclusory reference to these acts being, among other things, fraudulent, unfair, and deceptive, GER's allegations are that Shore breached "duties imposed by [the parties'] mutual consensus" rather than "duties imposed as a matter of social policy."  *Redevelopment Auth. of Cambria Cnty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996).  Therefore, GER's Louisiana unfair trade practices claim is also precluded by the gist-of-the-action doctrine.

## IV.    <u>Conclusion</u>

For the reasons set forth, Shore's partial motion to dismiss GER's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) is <u>granted</u>, and GER's claims at Count Three (conversion) and Count Five (LUTPCPL) are dismissed.

An appropriate order follows.

<u>*s/ W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge

Date:        July 26, 2024

cc/ecf:      All counsel of record